IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROBERTO CIAPRAZI,

                                    Plaintiff,

            vs.                                           Civil Action No.
                                                          9:02-CV-0915 (GLS/DEP)

GLENN S. GOORD, *et al.*,

                                    Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

FOR PLAINTIFF:

ROBERTO CIAPRAZI, *Pro Se*

FOR THE DEFENDANT:

HON. ELIOT SPITZER                             PATRICK MacRAE, ESQ.
Office of the Attorney General                 Assistant Attorney General
State of New York
Department of Law
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

        Plaintiff Roberto Ciaprazi, a New York State prison inmate who by

his own account has frequently lodged complaints against prison officials

and  been openly critical of their practices, has commenced this proceeding against the Commissioner of the New York State Department of Correctional Services ("DOCS") and several of that agency's employees pursuant to 42 U.S.C. § 1983, complaining of constitutional violations occurring during the course of his confinement.  In his complaint, Ciaprazi alleges that 1) a misbehavior report was filed against him in retaliation for his having previously engaged in protected activity; 2) he was deprived of procedural due process during the course of the hearing and resulting adverse finding associated with that misbehavior report; and 3) the conditions which he faced while in disciplinary confinement, following that hearing, were cruel and unusual.  Plaintiff asserts claims pursuant to the First, Eighth and Fourteenth Amendments to the United States Constitution, as well as under certain international human rights accords.

Currently pending before the court is a motion by the defendants seeking summary judgment dismissing plaintiff's complaint in its entirety. Having carefully reviewed the record in light of Ciaprazi's claims and defendants' arguments, I find that many of plaintiff's causes of action are devoid of merit, as a matter of law, and thus subject to dismissal. Because I find the existence of genuinely disputed issues of material fact

surrounding certain of plaintiff's claims, however, including notably his due process claim against defendants Melino, Kohl, Graham, Fitzpatrick, and Rogers, I recommend denial of defendants' motion seeking dismissal of plaintiff's claims against them.

I.    BACKGROUND

At the times relevant to his complaint, Ciaprazi was a prisoner entrusted to the custody of the DOCS.  Plaintiff alleges that after having been confined within the Clinton Correctional Facility since February, 1997, he was transferred into the Coxsackie Correctional Facility in April of 1998.  Complaint (Dkt. No. 1) ¶ 3.  Ciaprazi asserts that while at Coxsackie he was administered more than a dozen allegedly false misbehavior reports, resulting in disciplinary cell confinement of over 200 days as well as other "deprivations" of an unspecified nature.  *Id.* ¶ 3. Plaintiff contends that the issuance of those misbehavior reports was motivated by his having filed multiple complaints involving conduct of corrections workers and staff at Coxsackie.

At the heart of plaintiff's claims in this action is an incident which occurred at Coxsackie on July 31, 1999.  On that date, Ciaprazi and various other prisoners were taken to an enclosed holding area to provide

specimens for use in conducting drug screening urinalysis testing.  As a result of an interaction occurring during the course of that testing between the plaintiff and defendant Fitzpatrick, a corrections lieutenant at the facility, plaintiff was placed in keeplock confinement and issued a misbehavior report on the following day, charging him with creating a disturbance (Rule 104.13), interference with a prison employee (Rule 107.10), harassment (Rule 107.11), refusal to obey a direct order (Rule 106.10), and making threats (Rule 102.10).[1]  Defendants' Motion (Dkt. No. 39) Exh. A.

On July 31, 1999, following the underlying events and the imposition of keeplock confinement but prior to receiving the misbehavior report, plaintiff filed a grievance regarding the incident; plaintiff followed the filing of that grievance with a request on August 3, 1999 for prehearing release from confinement.  Complaint (Dkt. No. 1) ¶ 19.  Plaintiff received no response to that grievance.  *Id.*

A Tier III disciplinary hearing in connection with the charges stemming from the July 31, 1999 incident was conducted by defendant Melino, a corrections counselor at Coxsackie, beginning on August 4,

---

[1]      Keeplock confinement is defined by regulation to include restriction to one's prison room or cell.  *See*, *e.g.*, 7 N.Y.C.R.R. 251-2.2.

1999, and concluding on August 10, 1999.  Defendants' Motion (Dkt. No. 39) Exh. A at 2; *id.* Exh. B at 17, 152.[2]  Defendant Cole, who according to the plaintiff is a civilian employee working at Coxsackie, was assigned as plaintiff's inmate assistant in connection with that hearing.  The evidence adduced at that hearing included the misbehavior report, as well as testimony from the plaintiff, Corrections Lieutenant Fitzpatrick, Corrections Officer Marshal, Corrections Counselor Cole, Corrections Officer Rogers, Corrections Officer Simonik, Corrections Lieutenant McDermott, and Corrections Officer Phillips.  Defendants' Motion (Dkt. No. 39) Exh. B.

At the conclusion of the hearing, plaintiff was found guilty on all five counts, and a penalty of ten months of disciplinary confinement within the Coxsackie Special Housing Unit ("SHU"), with a corresponding loss of commissary, telephone and package privileges, was imposed.[3]

---

[2]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[3]     Of those sanctions, five months were suspended and deferred for a total of one hundred eighty days.  Defendants' Motion (Dkt. No. 39) Exh. A at 00.  The record is unclear regarding the amount of disciplinary confinement actually served by the plaintiff as a result of the hearing determination.

Defendants' Motion (Dkt. No. 39) Exh. A at 00.  Ciaprazi was not present when Hearing Officer Melino read her decision into the record, having previously been removed from the proceeding for engaging in what the hearing officer regarded as disruptive behavior.  *See* Defendants' Motion (Dkt. No. 39) Exh. B at 152.  Plaintiff appealed the hearing officer's decision to Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program, who on September 27, 1999 affirmed the determination.  Complaint (Dkt. No. 1) ¶ 51.

On August 20, 1999, plaintiff was transferred into the Upstate Correctional Facility, where he was apparently placed in SHU confinement to serve his disciplinary sentence.  Complaint (Dkt. No. 1) ¶ 52.  Plaintiff asserts that during that period, as well as while in keeplock confinement at Coxsackie, he was subjected to significant deprivations, which are described in summary fashion in his complaint, until September 16, 1999 when he was transferred into Clinton and exposed to similarly unpleasant conditions.  *Id.* ¶¶ 53-55; Ciaprazi Aff. (Dkt. No. 46) ¶¶ 54-57.  Plaintiff describes the keeplock confinement conditions at Coxsackie as even more unpleasant than those experienced in SHU, having included the deprivation of certain personal items such as food and snacks, toiletries,

musical instruments, and other similar amenities.  Ciaprazi Aff. (Dkt. No.

46) ¶ 54.  The deprivations experienced by the plaintiff while in keeplock

confinement at Coxsackie also entailed being subjected to "loud and non-

stop noise from other frustrated prisoners yelling and banging on the

doors," as well as the denial of access to the law library, books and other

reading materials, and various programs available to those in general

population.  *Id.* ¶ 55.  While at Upstate, plaintiff contends that he was

exposed to cell lighting between 6:00 am and 1:00 am; he was denied

reading materials; his medical requests "were ignored"; and he

experienced cold conditions and the inability to participate in available

recreation due to the lack of warm clothing.  *Id.* ¶ 57; Complaint (Dkt. No.

1) ¶ 53.  Similar conditions were experienced by the plaintiff while at

Clinton, including exposure to cold and lack of warm clothing and

blankets, together with the deprivation of medical and mental health

services.  Ciaprazi Aff. (Dkt. No. 46) ¶ 57; Complaint (Dkt. No. 1) ¶ 54..

## II.    PROCEDURAL HISTORY

The plaintiff, who is proceeding *pro se* and *in forma pauperis*,

commenced this action on July 15, 2002.  Dkt No. 1.  Named as

defendants in plaintiff's complaint are New York DOCS Commissioner

Glenn S. Goord; Ellen J. Croche, Chair of the New York State

Commission of Correction; Fred Lamey, a member of the New York

Commission of Correction; Donald Selsky, the DOCS Director of Special

Housing/Inmate Disciplinary Program; Corrections Counselor Melino,

whose first name is unknown; Cole, another DOCS employee whose

complete name is unknown to the plaintiff; H.D. Graham, Deputy

Superintendent for Security at Coxsackie; Corrections Lieutenant

Fitzpatrick; and Corrections Officer Rogers.  *Id.*  In his complaint, plaintiff

asserts nine separate causes of action, including claims 1) against

defendants Rogers and Fitzpatrick, for infringement of his First

Amendment right to free speech, and due process and equal protection

violations under the United States Constitution, as well as under the

Universal Declaration of Human Rights ("UDHR") and the International

Covenant on Civil and Political Rights ("ICCPR"); 2) against defendant

Graham, for failure to investigate plaintiff's grievance and to take actions

to prevent infringement of his constitutional rights; 3) against defendant

Cole, for failing to properly perform his duties as Ciaprazi's inmate

assistant; 4) against defendant Melino, for deprivation of due process,

based upon her conduct and bias during the disciplinary hearing; 5) of

-8-

retaliation against defendant Melino, asserting that her actions were taken in response to the filing of complaints and grievances by the plaintiff; 6) against defendants Goord and Selsky, based upon their failure to overturn plaintiff's disciplinary conviction and remediate the constitutional deprivations suffered by him; 7) against defendants Goord and Selsky for retaliation, based on plaintiff's prior filing of complaints and grievances; 8) against defendants Croche, Lamey and Goord, in their supervisory capacities, for failure to properly oversee DOCS employees and enact policies to prevent such abuses; and 9) against defendants Goord, Croche and Lamey, for maintaining and fostering a policy of widespread and disportionate disciplinary punishments within the state's prison system. Complaint (Dkt. No. 1) at 14-16.  Plaintiff's complaint seeks both injunctive and monetary relief.  *Id.*

Following the filing of an answer on behalf of the eight defendants who have been served in the action on December 3, 2002, generally denying plaintiff's allegations and setting forth various affirmative defenses, Dkt. No. 13, and pretrial discovery, on February 27, 2004 those defendants moved seeking entry of summary judgment on various bases.[4]

---

[4]    There is no indication on the docket sheet that defendant Fitzpatrick has been served in the action.  While plaintiff requested and obtained the entry of that

Dkt. No. 39.  Aided only by plaintiff's complaint, the record related to the

relevant internal disciplinary proceedings against the plaintiffs, and

answers by plaintiff to defendants' interrogatories, and without the benefit

of either a transcript of plaintiff's deposition or any affidavits, other than

from their counsel, defendants have moved for summary judgment

seeking dismissal of plaintiff's claims on various grounds.  *Id.*

In their motion, defendants argue that 1) plaintiff has failed to offer proof

from which a reasonable factfinder could conclude that cognizable

constitutional violations have occurred; 2) defendants Goord and Selsky

lack the requisite personal involvement in the constitutional violations

alleged; and 3) plaintiff should be denied the injunctive relief which he

seeks.  *Id.*  Plaintiff has since submitted papers in opposition to

defendants' summary judgment motion.[5]  Dkt. No. 46.  Defendants'

---

defendant's default on June 20, 2003, *see* Dkt. Nos. 20, 21, his default was
subsequently vacated by order issued by District Judge David N. Hurd on January 13,
2004, based upon plaintiff's failure to prove that defendant Fitzpatrick had in fact been
served.  *See* Dkt. No. 35.

[5]       In his papers in opposition to defendants' summary judgment motion,
plaintiff has raised several procedural objections to defendants' motion papers.  In
addressing those objections I am mindful of the preference that matters before the
court, whenever possible, be decided on their merits rather than on the basis of
technical procedural shortcomings.  *See*, *e.g.*, *Upper Hudson Planned Parenthood,
Inc. v. Doe*, 836 F.Supp. 939, 943 n.9 (N.D.N.Y. 1993) (McCurn, S.J.).  In any event,
plaintiff's procedural objections are not well-founded.

In his opposition papers, plaintiff asserts that defendants' motion is procedurally

motion, which is now ripe for determination, has been referred to me for

the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See*

---

defective since none of the moving papers are signed, as required under Rule 11 of the Federal Rules of Civil Procedure.  *See* Plaintiff's Memorandum (Dkt. No. 46) at 1. While not bearing signatures in the traditional sense, all of defendants' original moving papers, which were filed electronically with the court in accordance with this court's case management and electronic case filing requirements (*see* Northern District of New York Local Rule 5.1.2 and General Order No. 22), were properly signed.

Plaintiff also complains of alterations by the defendants to the caption of the case as set forth in his complaint.  Specifically, Ciaprazi challenges defendants' addition of the word "unknown" in relation to defendants Melino and Cole, who are identified in plaintiff's complaint only by last names.  Since it is well established that the caption of a pleading is not substantive in nature, and therefore does not control, the addition of that word does not provide a basis to reject defendants' motion papers. *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure Civil § 1321 (3d ed. 2004) ("Although helpful to the district court . . . the caption is not determinative as to the identity of the parties to the action"); *see also Prisco v. State of New York*, 804 F.Supp. 518, 521 (S.D.N.Y. 1992) (citing an earlier edition of Wright & Miller).

As plaintiff notes, defendants' Local Rule 7.1(a)(3) statement of uncontested, material facts, submitted along with the various other papers in support of their motion, indicates that it is submitted on behalf of a defendant Landry, even though there is no person by that name identified as a defendant in plaintiff's complaint.  *See* Dkt. No. 39. Because this is an obvious typographical error, and the contents of the statement obviously relate to the facts of this case, I decline plaintiff's invitation to reject and treat the statement as a nullity on this basis.

I note that Ciaprazi, who appears to be well versed in the applicable requirements of the federal and local rules, himself has overlooked the important requirement that legal memoranda submitted in connection with motions to not exceed twenty-five pages in length.  Northern District of New York Local Rule 7.1(a)(1). Plaintiff's memorandum, which is thirty-four pages in length, has been accepted by the court, without objection by the defendants, despite his failure to obtain prior permission to file an oversized brief.  Plaintiff is admonished that in the future, just as he seeks to hold defendants to the requirements of the governing rules, he too must conform to those requirements.

*also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

        A.    Summary Judgment Standard

        Summary judgment is warranted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits . . . show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247, 106 S. Ct. 2505, 2509-10 (1986); *Security Insurance Co. of Hartford*

*v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue;

the failure to meet this burden warrants denial of the motion.  *Anderson*,

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391 F.3d

at 83.

        In the event this initial burden is met, the opposing party must show,

through affidavits or otherwise, that there is a material issue of fact for

trial.[6]  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  When deciding a

summary judgment motion, the court must resolve any ambiguities, and

draw all inferences from the facts, in a light most favorable to the

nonmoving party.  *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir.

1998).  Summary judgment is inappropriate where "review of the record

reveals sufficient evidence for a rational trier of fact to find in the [non-

movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir.

2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at

2511 (summary judgment is appropriate only when "there can be but one

reasonable conclusion as to the verdict.").

    B.    Plaintiff's First Amendment Retaliation Claim

    Plaintiff's complaint asserts several claims of unlawful retaliation.  In

his first cause of action, plaintiff asserts that the actions of defendants

Rogers and Fitzpatrick in confining him to a cell and issuing, or directing

---------------------

        [6]      A material fact is genuinely in dispute "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at
248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when
defending against summary judgment motions, they must establish more than merely
"metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v.
Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to
consider whether *pro se* plaintiff understood nature of summary judgment process).

the issuance of, misbehavior reports were taken in retaliation for his having filed prior grievances and complaints regarding DOCS officials, including those working at Coxsackie. Complaint (Dkt. No. 1) First Cause of Action. Plaintiff's second claim alleges that defendant Rogers' failure to investigate plaintiff's complaint regarding the allegedly false misbehavior report, and to order his release from confinement pending a disciplinary hearing, were similarly retaliatory. *Id.* Second Cause of Action. Plaintiff further alleges in his fifth cause of action that the actions of Hearing Officer Melino, including in finding him guilty on all five counts, were motivated by Ciaprazi's filing of prior grievances and complaints. *Id.* Fifth Cause of Action. Plaintiff's seventh claim similarly attributes the failure of defendants Goord and Selsky to reverse the hearing officer's determination, on appeal, to retaliation for his having engaged in protected activity. *Id.* Seventh Cause of Action. Defendants maintain that these retaliation claims are legally deficient, and that the record contains no evidence upon which a factfinder could conclude that unlawful retaliation occurred.

Claims of retaliation like those asserted by the plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-

81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See id.* at 81-83.  Because of the relative ease with which claims of retaliation can be incanted, however, as exemplified by plaintiff's claims in this action, the courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002).

In order to state a *prima facie* claim under section 1983 for unlawful retaliation in a case such as this, a plaintiff must advance non-conclusory

allegations establishing that 1) the conduct or speech at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes*, 239 F.3d at 492).  If the plaintiff carries this burden, the defendants must then show, by a preponderance of the evidence, that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

As can be seen, evaluation of claims of retaliation is a particularly fact-laden exercise, since such claims revolve around both the engaging in protected conduct and establishment of a nexus between that conduct and the adverse action ultimately taken.  In making the required analysis

in this case, however, the court is somewhat disadvantaged by virtue of the fact that defendants' summary judgment motion is not particularly enlightening as to the basis for their claim that the court is positioned to find, as a matter of law, that plaintiff's retaliation claims are lacking in merit.

In their motion the defendants, in the context of the now-familiar standard governing analysis of First Amendment retaliation claims, acknowledge that the plaintiff, who has lodged formal complaints of prison conditions and treatment of inmates, has engaged in protected activity. That plaintiff has filed an unusually large number of grievances and lawsuits, and taken other steps to complain publicly about matters associated with his confinement by the DOCS, is both apparent from the record before the court, and not controverted by the defendants.  Indeed, in his response to defendants' summary judgment motion, plaintiff proudly states that he has "systematically exposed, vehemently criticized, and even ridiculed the inappropriate and arbitrary policies and actions of the staff at Coxsackie, including the actions of defendant Goord and of the Superintendent and Deputy Superintendents of Coxsackie."[7]  Plaintiff's

---

[7]     Plaintiff has referred to his efforts in this regard as a "blitz of grievances and complaints[.]" Plaintiff's Aff. (Dkt. No. 46) ¶ 52.

Affidavit (Dkt. No. 46) ¶ 32.  Plaintiff has therefore established, at least for purposes of the instant motion, that he was engaged in protected activity sufficient to trigger First Amendment rights against acts taken in retribution for having voiced those types of complaints.  *Graham*, 89 F.3d at 80; *Morello v. James*, 810 F.2d 344, 346-47 (2d Cir. 1987).

Defendants argue, however, that the record is lacking in evidence to establish the requisite connection between that protected activity and the adverse actions taken against Ciaprazi by prison officials.  Defendants' legal position is advanced, in part, in an affidavit from their counsel, Patrick F. MacRae, Esq., outlining the evidence relied upon by the defendants in making their motions.[8]   Defendants also note, in further support of their motion, the requirement that retaliation claims rest upon more than mere conclusory allegations regarding the state of mind of prison officials.  *See* Dkt. No. 39 at 8-9; *e.g.*, *Flaherty*, 713 F.2d at 13.

As plaintiff correctly notes, the applicable pleading requirements, including Rule 8 of the Federal Rules of Civil Procedure, provide for mere "notice" pleading, and do not require that complaints contain every detail

_____

[8]      The attorney's affirmation in and of itself is, of course, of no evidentiary value in determining the motion for summary judgment since none of the facts upon which such a finding would ostensibly be based are within his personal knowledge. *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011-12 (2d Cir. 1986).

associated with a plaintiff's claims except in categories not applicable to this case.  *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167-69, 113 S. Ct. 1160, 1162-63 (1993). Accordingly, the mere fact that the plaintiff's retaliation claims are pleaded in non-specific, conclusory terms does not alone entitle defendants to summary dismissal of those claims.

In this case the defendants have satisfied their initial, modest threshold burden of establishing the lack of evidentiary support for plaintiff's retaliation claims.  Though conventional wisdom might dictate the submission of affidavits from the primary actors, including notably defendants Rogers and Fitzpatrick, disavowing any retaliatory motives associated with their actions, defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's retaliation claims, including through plaintiff's responses to defendants' interrogatories as well as the proceedings associated with the underlying disciplinary matter, is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims.  *Celotex*, 477 U.S. at 323-34, 106 S. Ct. at 2553; *see also Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

There is no requirement under Rule 56 of the Federal Rules of Civil Procedure or otherwise that a party affidavit be submitted to support such a motion, which instead can be based upon any admissible evidence. *Id.*

To demonstrate that a reasonable factfinder could discern a nexus between plaintiff's filing of grievances and the disciplinary matters associated with the incident at issue, Ciaprazi essentially makes two arguments. First, he contends that the manifest falsity of the misbehavior report as well as testimony proffered during the disciplinary hearing give rise to an inference that the disciplinary matters were motivated toward retaliatory animus. Secondly, plaintiff argues that the sheer number of grievances and formal complaints lodged by him, including some close in temporal proximity to the underlying incident, similarly gives rise to a legitimate inference of retaliatory motivation. *See* Ciaprazi Memorandum (Dkt. No. 46) at 14.

Plaintiff's argument in this regard is significantly diluted by the sheer number of complaints lodged by him over time. By his own admission, plaintiff has regularly and openly complained of prison policies and practices and during the relevant time period prior to the July 31, 1999 incident, and indeed had filed many formal complaints regarding his

-20-

treatment while at Coxsackie.  Yet, plaintiff has submitted no evidence that

any of those complaints related to defendants Rogers or Fitzpatrick, the

two principal actors in this case, nor has he pointed to any collaboration

between those named in his prior complaints and Fitzpatrick and Rogers.

At best, plaintiff has argued that prior to July 31, 1999 he "filed complaints

and/or grievances against Lieutenants Sweeney, Armstrong, Skrocky and

McDermott, all colleagues of defendant Fitzpatrick of the same rang [sic]

with defendant Fitzpatrick."  *Id.* ¶ 32.

     In an equally tenuous attempt to link his protected activity with the

issuance of a misbehavior report, plaintiff notes that on May 26, 1999 he

filed a grievance for harassment against an employee named Fitzpatrick,

who was assigned to assist him in connection with another Tier III

disciplinary hearing, stating his naked belief, lacking in evidentiary

support, that the employee named in that complaint "may be and

apparently is a relative of defendant Fitzpatrick."  *Id.* ¶ 33, Exh. 39.

Plaintiff also notes that on July 21, 1999 he filed a grievance accusing

defendant Goord of "gross abuse of power", requesting an investigation of

defendant Goord by the New York State Police and federal authorities,

and that five days later, on July 26, 1999, he filed a complaint with various

agencies including the United States Department of Prisons complaining of mistreatment. *Id.* ¶¶ 34, 35.

While there is some appeal to finding the requisite fact issue to avoid the entry of summary judgment on plaintiff's retaliation claims based upon the timing of these events, that factor is undermined by the steady stream of grievances filed by him on a regular and continuing basis. Were the plaintiff someone who had rarely if ever complained about prison conditions, but shortly before being issued a misbehavior report had lodged a formal complaint against or implicating the conduct of the officer who issued the disciplinary citation, a very different set of circumstances would be presented, and summary judgment would not be warranted. In this case, however, plaintiff can point to no complaints lodged by him against or implicating the conduct of defendant Fitzpatrick, who issued the disputed misbehavior report. Accordingly, I find that the defendants have established that they are entitled to summary dismissal of plaintiff's retaliation claims based upon plaintiff's failure to establish a basis on which a reasonable factfinder could find the requisite connection between plaintiff's grievance activities and the issuance of the misbehavior report

and subsequent disciplinary hearing.[9]  *E.g.*, *Williams v. Goord*, 111

F.Supp.2d 280, 290 (S.D.N.Y. 2000); *Mahotep v. DeLuca*, 3 F.Supp.2d

385, 389 (W.D.N.Y. 1998).

### C.   Plaintiff's Eighth Amendment Cruel And Unusual Punishment Claim

In his complaint Ciaprazi, in somewhat indiscriminate fashion,

asserts that the actions taken against him by the various defendants

resulted in his exposure to cruel and unusual punishment, in violation of

the Eighth Amendment.[10]  Plaintiff's cruel and unusual punishment claims

appear to center upon the conditions which he faced as a result of the

disciplinary proceedings against him and resulting in SHU confinement

initially at Coxsackie, and later at Upstate and at Clinton.  In their motion,

---

[9]     Prior to the Second Circuit's recent decision in *Gill*, defendants perhaps could have effectively argued that defendants' actions were not likely to deter, and in fact have not chilled, plaintiff's exercise of his First Amendment rights, and therefore do not give rise to a retaliation claim.  *E.g.*, *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir.2002); *Curley v. Village of Suffern*, 268 F.3d 65, 72-73 (2d Cir.2001); *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d  Cir.1992).  In its recent decision in *Gill*, however, the Second Circuit clarified that such a finding does not end the inquiry, since the critical focus is not upon the subjective element, but is instead objective, examining whether the retaliatory conduct alleged "would deter a similarly situated individual of ordinary firmness from exercising. . .constitutional rights."  *Gill,* 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), superseded by 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003)).

[10]     That amendment provides, in pertinent part, that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

defendants assert that these claims are similarly deficient as a matter of
law.

  The Eighth Amendment's prohibition of cruel and unusual
punishment encompasses punishments that involve the "unnecessary and
wanton infliction of pain" and are incompatible with "the evolving standards
of decency that mark the progress of a maturing society." *Estelle v.
Gamble*, 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also
Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing,
*inter alia*, *Estelle*). The Eighth Amendment does not mandate comfortable
prisons, but yet it does not tolerate inhumane ones either; thus the
conditions of an inmate's confinement are subject to Eighth Amendment
scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976
(1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392,
2400 (1981)).

  A claim alleging that prison conditions violate the Eighth Amendment
must satisfy both an objective and subjective requirement – the conditions
must be "sufficiently serious" from an objective point of view, and the
plaintiff must demonstrate that prison officials acted subjectively with
"deliberate indifference". *See Leach v. Dufrain*, 103 F. Supp.2d 542, 546

(N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.

Ct. 2321 (1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at

*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also*,

*generally*, *Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference

exists if an official "knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S.

Ct. at 1978; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998

WL 713809, at *2 (same).

       Plaintiff's cruel and unusual punishment claim challenges the fact

that 1) he was placed in a double bunk cell at Upstate; 2) was placed in

isolation and exposed to light except for five hours each night; 3) was

deprived of such amenities such as writing paper and envelopes, proper

access to the law library, medical care, access to newspapers, magazines

and books, access to the courts, and legal papers; 4) was exposed to loud

and boisterous behavior on the part of other inmates; 5) was denied

essential clothing and bedding as well as personal hygiene materials,

radios or headphones, books, newspapers and magazines; and 6) was

exposed to cold conditions, leading him to suffer at least one case of the flu.  Complaint (Dkt. No. 1) ¶¶ 52-56; *see also* Plaintiff's Affidavit (Dkt. No. 46) ¶¶ 53-57.  To counter these allegations, defendants have submitted nothing to reflect the lack of a basis upon which a reasonable factfinder could conclude that plaintiff was exposed to cruel and unusual punishment while in disciplinary isolation as a result of the Tier III determination now at issue.  Instead, defendants' motion focuses upon a narrow aspect of plaintiff's Eighth Amendment claim, in which they assert that the lack of policies guaranteed to result in uniformity throughout the DOCS system of punishments to result in a Eighth Amendment violation.

As skeptical as perhaps one may be regarding plaintiff's ability to ultimately persuade a factfinder that the admittedly unpleasant conditions to which he was apparently exposed and the deprivations suffered while in disciplinary confinement rise to a constitutionally significant level, I am unable to state, based upon the record as currently constituted, that no reasonable factfinder could so conclude.  I therefore recommend denial of defendants' motion to dismiss plaintiff's Eighth Amendment cruel and unusual punishment claim relating to the conditions of his confinement.[11]

_____

[11]     In their motion, defendants have not argued lack of personal involvement with regard to their Eighth Amendment claims.  It therefore remains to be seen

Included within his Eighth Amendment claim, though more appropriately grouped with his due process cause of action, is plaintiff's contention that because the Tier III hearing officer was provided the unfettered discretion, in the event of finding of guilt, to impose a penalty of whatever magnitude seen fit, the disciplinary scheme in place at the DOCS is constitutionally infirm.  In plaintiff's case, however, the imposed penalty of ten months of disciplinary confinement, 180 days of which were deferred, fell comfortably within the bounds of acceptable levels under the Eighth Amendment.  Consequently, whatever may be said about plaintiff's arguments regarding the discretion affording to hearing officers, he lacks standing to raise such a claim.  *See Trammell v. Mantello*, No. 90-CV-382, 1996 WL 863518, at *8-*9 (W.D.N.Y. June 10, 1996) (Tier III regulations pass constitutional muster).

D.    Plaintiff's Procedural Due Process Claim

In their motion, defendants also challenge plaintiff's contention that he was denied procedural due process during the course of the disciplinary hearing which resulted in his disciplinary confinement for a period of five months.  In support of their motion, defendants argue both

---

whether plaintiff can establish the defendants' participation in the Eighth Amendment violations alleged.

that plaintiff was not deprived of a constitutionally cognizable liberty interest, and that even assuming he was, he was afforded the requisite process due under the Fourteenth Amendment in connection with that deprivation.

To successfully state a claim under 42 U.S.C. § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields*, 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes*, 143 F.3d at 658; *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

### 1.   Liberty Interest

Addressing the first of these required showings, in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84, 115 S. Ct. at

-28-

2300; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658.

Defendants challenge the applicability of both of these factors.

Initially, defendants question whether New York has, by statute or

otherwise, created a protected liberty interest in prisoners remaining free

from segregation, including for disciplinary reasons, arguing that it has

not. Defendants' Memorandum (Dkt. No. 39) at 14. The cases cited in

support of that proposition, however, which relate to whether there is a

constitutional or liberty interest in being assigned to a particular program,

job assignment, or facility, are inapposite. *See*, *e.g.*, *Klos v. Haskell*, 48

F.3d 81, 87-88 (2d Cir. 1995) (involving revocation of assignment to

"shock incarceration" program); *Hall v. Unknown Named Agents of N.Y.*

*State Dept. for Corr. Servs. for APPU Unit at Clinton Prison*, 825 F.2d 642,

645-46 (2d Cir. 1987) (involving assignment to Assessment Program and

Preparation Unit); *see also Montanye v. Haymes,* 427 U.S. 236, 243, 96

S. Ct. 2543, 2547 (1976) (no constitutional right of inmate to be placed in

any particular facility); *Frazer v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996)

("no protected liberty interest in a particular job assignment"). Despite

defendants' assertion to the contrary, it is now firmly established that

through its regulatory scheme, New York State has created a liberty

interest in prisoners remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor.  *See*, *e.g.*, *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004) (citing *Welch v. Bartlett*, 196 F.3d 389, 394 n.4 (2d Cir. 1999); *see also LaBounty v. Coombe,* No. 95 CIV 2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.).

Having rejected defendants' contention that the State has not created such an interest, I next turn to examination of whether the conditions of plaintiff's disciplinary confinement, as alleged by him, rise to the level of an atypical and significant hardship under *Sandin*.  Atypicality in a *Sandin* inquiry normally presents a question of law.[12]  *Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).  When determining whether a plaintiff possesses a cognizable liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement.  *See Sealey*, 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 48-49

---

[12]     In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution.  *Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

(2d Cir. 1997).  In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary.[13] *Hynes,* 143 F.3d at 658; *Arce*, 139 F.3d at 336.

Given that plaintiff has shown that he was subjected to disciplinary confinement for a period of five months, and has alleged his exposure to conditions beyond those normally associated with such SHU confinement, as described in the applicable regulations, at this juncture I am unable to conclude, as a matter of law, that he was not deprived of a constitutionally significant liberty interest as a result of the disciplinary proceeding at issue.  I therefore recommend against summary dismissal of plaintiff's due process claims on this basis.

2.    Due Process

---

[13]     While not the only factor to be considered, the duration of a disciplinary keeplock confinement remains significant under *Sandin*.  *Colon*, 215 F.3d at 231. Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see id.* at 232 n.5), the Second Circuit generally takes the position that SHU confinement under ordinary conditions of more than 305 days rises to the level of atypicality, whereas normal SHU confinement of 101 days or less does not.  *Id.* at 231-32 (305 days of SHU confinement constitutes an atypical and sufficient departure).  In fact, in *Colon v. Howard* a Second Circuit panel split markedly on whether or not adoption of a 180-day "bright line" test for examining SHU confinement would be appropriate and helpful in resolving these types of cases. *See id.* at 232-34 (Newman, C.J.), 235-37 (Walker, C.J. and Sack, C.J., concurring in part).

The procedural protections to which a prison inmate is entitled before being deprived of a recognized liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974).  Under *Wolff*, the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  *Wolff*, 418 U.S. at 564-67, 94 S. Ct. at 2978-80; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).

Plaintiff's procedural due process claim is multi-faceted.  In that claim, Ciaprazi maintains that 1) he was denied meaningful assistance by defendant Cole, who refused his request to interview potential witnesses identified by the plaintiff; 2) Hearing Officer Melino effectively denied the plaintiff access to witnesses since witness waiver forms, not to plaintiff's liking in form, were allegedly presented by an unknowledgeable corrections officer to those inmates whose testimony was requested by

Ciaprazi, following which those inmates apparently refused to sign the waiver forms and appear to testify on his behalf; 3) the hearing officer was biased and partial, and demonstrated open hostility toward the plaintiff; 4) the hearing officer's disciplinary determination was not supported by the evidence; and 5) the hearing officer refused plaintiff's suggestion to administer polygraph tests to defendants Rogers and Fitzpatrick, as well as to Ciaprazi.  Also implicit in plaintiff's due process claim is his contention that his constitutional rights were violated through the issuance of a false misbehavior report.[14]

Plaintiff's arguments relating to the sufficiency of evidence supporting the hearing officer's finding of guilt can be swiftly discounted. The Constitution, including its Due Process Clause, requires only that there be some evidence of guilt supporting a prison disciplinary determination.  *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*,

---

[14]     Among the due process violations alleged in plaintiff's complaint is the claim that by taking into account his prior disciplinary record when determining the appropriate punishment to be imposed based upon the finding of guilt, hearing officer Melino violated the constitutional guaranty against double jeopardy.  Since it is well established that the double jeopardy clause does not apply in the prison disciplinary setting, this claim lacks merit.  *Bolanos v. Coughlin*, No. 91 Civ. 5330, 1993 WL 762112, at *13 (S.D.N.Y. Oct. 15, 1993).  Plaintiff's contention that the hearing officer's actions in this regard also violated an unspecified New York regulation fares no better, since such an allegation does not automatically support a claim of civil rights violations under 42 U.S.C. § 1983.  *Alnutt v. Cleary*, 913 F.Supp. 160, 168 (W.D.N.Y. 1996).

472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774 (1985).  Having reviewed the record of plaintiff's disciplinary proceeding in light of his submissions, I find that this standard has been met.

Plaintiff's claims regarding the allegedly false misbehavior report also lack merit.  It is well established that in the absence of other aggravating factors, an inmate enjoys no constitutional right against the issuance of a false misbehavior report.[15]  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988).  The rationale supporting this general rule is that an inmate's procedural due process rights are adequately safeguarded by the opportunity to challenge and present evidence to rebut the false accusations at a disciplinary hearing.  *Freeman*, 808 F.2d at 953.

As for plaintiff's contention that his due process rights were violated when polygraph tests were not administered to key corrections officials, as requested by him, plaintiff has cited no cases – nor is the court aware of any – which require the administering of polygraph tests in connection with

---

[15]     Unquestionably, a prisoner does enjoy a substantive due process right against the issuance of a false misbehavior report as retribution for having engaged in protected activity.  *Jones v. Coughlin*, 45 F.3d 677, 679-80 (2d Cir. 1995).  In light of my finding of no connection between plaintiff's complaints and the issuance by defendant Fitzpatrick of the misbehavior report, however, such a claim does not lie in this action.

parties and witnesses in the context of an inmate disciplinary determination. *See Hinebaugh v. Wiley*, 137 F.Supp.2d 69, 79 (N.D.N.Y. 2001) ("some evidence" does not require independent examination of credibility and therefore "certainly does not require" court to order personnel to submit to polygraph to ascertain if hearing testimony was truthful). This issue, then, provides no basis for finding the existence of a procedural due process violation.

Plaintiff's allegations regarding the ineffectiveness of his assigned assistant provide a greater basis for pause. While the requirements associated with the provision of such assistance are modest, they are not non-existent. Under *Wolff*, an inmate facing a Tier III disciplinary hearing is entitled to meaningful assistance in preparing his or her defense. *Eng*, 858 F.2d at 897-98. In this case, plaintiff asserts that while he was assigned an assistant, he was denied meaningful assistance from that individual. In support of this contention, plaintiff alleges that he identified certain witnesses critical to his defense, but that his assistant refused to interview those witnesses with an eye toward requesting their testimony during the hearing. Complaint (Dkt. No. 1) ¶¶ 20-21; Ciaprazi Aff. (Dkt. No. 46) ¶ 40. This, if true, could establish a due process violation based

-35-

on the inadequacy of the inmate assistance provided to the plaintiff.  *See*

*Ayers v. Ryan*, 152 F.3d 77, 81 (2d Cir. 1998).

In light of my inability to find, as a matter of law, that plaintiff did not

suffer the deprivation of a liberty interest as a result of his five month

period of disciplinary confinement, and additionally to conclude that no

reasonable factfinder could find the existence of a due process violation

associated with that disciplinary confinement, I recommend denial of the

portion of defendants' summary judgment motion which seeks dismissal of

plaintiff's due process claims.

     F.    Equal Protection

In his complaint plaintiff also complains of the alleged deprivation of

equal protection.  Defendants contend that this claim is also subject to

dismissal as a matter of law.

"The Equal Protection Clause of the Fourteenth Amendment

commands that no State shall 'deny to any person within its jurisdiction the

equal protection of the laws,' which is essentially a direction that all

persons similarly situated should be treated alike."  *City of Cleburne, Tx. v.*

*Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985)

(citation omitted).  The general rule is that a policy is presumed to be valid

and will be sustained if the classification drawn by that policy is rationally related to a legitimate state interest.  *Id.* at 440, 105 S. Ct. at 3254.  One exception to that rule, however, is when a policy classifies by race, alienage, or national origin – "[t]hese factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy – a view that those in the burdened class are not as worthy or deserving as others." *Id.* For this reason, these policies are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest.  *Id.*  The essence of a cognizable equal protection claim includes a showing of "clear and intentional discrimination."  *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 401 (1944) (internal quotation and citations omitted).

The apparent basis for plaintiff's equal protection claim is his contention that in light of his national origin, he was treated differently than United States citizen counterparts.[16]  In the face of defendants' summary judgment motion, it was incumbent upon the plaintiff to come forward with evidence which could support a claim that he was treated differently than

---

[16]     Plaintiff is a Romanian citizen.  Complaint (Dkt. No. 1) at 3.

-37-

other inmates, and that the difference in treatment could properly be

attributed to his status as a Romanian.  As such evidence, plaintiff offers

only a statement made to him by defendant Fitzpatrick at one point, in

substance, that plaintiff had "now . . . learned to speak English."  *See*

Plaintiff's Memorandum (Dkt. No. 46) at 29.  Beyond this slender reed,

plaintiff offers no evidence to support his claim that he was treated

differently than inmates not of his national origin, and indeed

acknowledges mere speculation on his part as to this premise, arguing

that "discrimination based on national origin <u>may</u> . . . have placed [sic] a

role in defendants' unlawful actions[.] "  Plaintiff's Memorandum (Dkt. No.

46) at 29 (emphasis added).  Instead, plaintiff's equal protection claims

consist of mere surmise and speculation, and are subject to dismissal on

this basis.  *See*, *e.g.*, *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)

("complaints relying on the civil rights statutes are insufficient unless they

contain some specific allegations of fact indicating a deprivation of rights,

instead of a litany of general conclusions that shock but have no

meaning").

Despite being obligated to do so at this juncture, plaintiff has failed

to adduce any evidence to show either that he was treated differently than

his non-Romanian counterparts, and that the difference in treatment was based upon his national origin.  I therefore recommend dismissal of plaintiff's equal protection claims as a matter of law.

> G.  United Nations Resolutions

Each of plaintiff's eight causes of action is based, in part, upon two international agreements, including the Universal Declaration of Human Rights ("UDHR") and the International Covenant on Civil and Political Rights ("ICCPR").  Defendants maintain that as a matter of law, those provisions do not support claims under section 1983.

Section 1983 provides, in pertinent part, for a right of action on behalf of any person deprived of "any rights, privileges, or immunities secured by the Constitution and laws[.]"  42 U.S.C. § 1983.  Plaintiff argues that because the United States is a signatory to these two treaty-like provisions, they have the force of law and can be implemented, and individual treaty violations can give rise to recourse, under section 1983.

It is true that violation of a treaty entered into by the United States can serve as a basis for a claim for damages under section 1983, provided that the treaty allows for a private right of action to redress any alleged violations of its provisions.  *Standt v. City of New York*, 153 F.

Supp.2d 417, 422-30 (S.D.N.Y. 2001) (finding private right of action under section 1983 for violation of the Vienna Convention on Consular Relations, 21 U.S.T. 77, 101 T.I.A.S. No. 6820, 596 U.N.T.S. 261 (April 24, 1963)). To the extent that the defendants argue otherwise, and contend that treaties – as distinct from constitutional and other types of federal statutory provisions – cannot support a claim for section 1983 liability, *see* Defendants' Memorandum (Dkt. No. 39) at 17-18, that position therefore lacks support.

As can be seen, analysis of the sufficiency of plaintiff's claims under the cited treaty provisions turns upon whether those international agreements confer individual rights of action.  In order to be found deserving of enforcement under section 1983 as a "law", a treaty ratified by the Senate must either be found to be self-executing or, alternatively, must have been the subject of implementing legislation by Congress. *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1298 (3d Cir. 1979).

Since plaintiff has pointed to no applicable implementing legislation, nor is the court aware of any, the availability of the ICCPR to support plaintiff's section 1983 claim depends upon whether it is self-executing.

The majority of the courts addressing this issue, however, including within the Second Circuit, have concluded that it is not.[17]  *See*, *e.g.*, *Poindexter v. Nash*, 333 F.3d 372, 379 (2d Cir. 2003); *Murray v. Warden, FCI Raybrook*, No. 9:01-CV-255, 2002 WL 31741247, at *11 n.10 (N.D.N.Y. Dec. 5, 2002) (Sharpe, M.J.) (citing *U.S. ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1063 (8th Cir. 2002) and *Reaves v. Warden*, No. Civ. A3:01-CV-1149, 2002 WL 535398, at *9 (M.D. Pa. Mar. 22, 2002).  Similarly, the UDHR has been characterized by the Second Circuit as "non-binding." *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 167-68 (2d Cir. 2003).

Based upon the foregoing, and without deciding whether the evidence in the record demonstrates a genuine issue of material fact as to whether those provisions were violated by defendants' alleged actions toward the plaintiff, I find that Ciaprazi's claims under the ICCPR and UDHR are legally deficient as a matter of law.  I therefore recommend dismissal of plaintiff's claims which are dependent on those two

---

[17]    Even in one of the cases relied heavily upon by the plaintiff, *Maria v. McElroy*, 68 F. Supp.2d 206, 231 (E.D.N.Y. 1999) – a case which has since been effectively overruled on other grounds, *see Restrepo v. McElroy*, 369 F.3d 627 (2d Cir. 2004) – the court recognized that the ICCPR was not "self-executing".  68 F. Supp.2d at 231.

international agreements.

    H.    <u>Personal Involvement</u>

_____Defendants claim that plaintiff's claims against defendants Goord

and Selsky are legally deficient, in that the record fails to establish their

requisite personal involvement in the constitutional violations alleged.

    Personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under section 1983.

*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of*

*Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,*

568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct.

1282 (1978)).  In order to prevail on a section 1983 cause of action

against an individual, a plaintiff must show some tangible connection

between the constitutional violation alleged and that particular defendant.

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

    A supervisor cannot be liable for damages under section 1983 solely

by virtue of being a supervisor – there is no *respondeat superior* liability

under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.

2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be

liable in one of several ways: 1) the supervisor may have directly

participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

The basis for asserting liability against defendant Selsky arises exclusively from plaintiff's appeal from his disciplinary determination.  That appeal was addressed by defendant Selsky, whose review of that appeal sufficiently establishes his personal involvement in any alleged due process violations based upon his being positioned to discern and remedy the ongoing effects of any such violations.  *See*, *e.g.*, *Gilbert v. Selsky*, 867 F.Supp. 159, 166 (S.D.N.Y. 1994).

Plaintiff's claim against defendant Goord is far more tenuous. Plaintiff asserts that because his appeal was mailed directly to defendant Goord who, consistent with his established practice, then referred it to

defendant Selsky for review, the Commissioner "presumably read [its] contents." *See* Plaintiff's Memorandum (Dkt. No. 46) at 32. This, coupled with his contention that as the ultimate supervisor of the DOCS defendant Goord was positioned to remedy the violations which he suffered, forms the sole basis for his claims against defendant Goord. These are merely claims against defendant Goord in his supervisory capacity; to sanction them would be to allow for *respondeat superior* liability. Since it is well established that such liability does not lie under section 1983, and there is no other discernible basis to conclude defendant Goord's awareness of or involvement in the matters alleged in plaintiff's complaint, I recommend that defendants' motion be granted and plaintiff's claims against defendant Goord be dismissed based upon lack of personal involvement. *Richardson*, 347 F.3d at 435 (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985); "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim"); *Scott v. Coughlin*, 78 F.Supp.2d 299, 312 (S.D.N.Y. 2000) (Commissioner's act of forwarding appeals addressed to him to Selsky insufficient to establish personal involvement; citing, *inter alia*, *Sealey v. Giltner*, 116 F.3d 47, 51

(2d Cir. 1991)).

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The plaintiff, an experienced and well-versed *pro se* litigant, has commenced this action asserting various claims arising out of the issuance of a disciplinary misbehavior report and the process which followed, including the punishment received.  Upon examination of the record, I find no evidence tending to demonstrate that the adverse actions taken against the plaintiff were motivated by disciplinary animus, and thereby recommend the entry of summary judgment dismissing his retaliation claim.  I do, however, find the existence of triable issues of fact regarding whether or not Ciaprazi was deprived of a constitutionally significant liberty interest, and whether the assistance provided to the plaintiff in anticipation of his hearing was constitutionally adequate, and therefore recommend against summary dismissal of plaintiff's procedural due process claims.

Addressing plaintiff's Eighth Amendment claims I find, particularly in view of the lack of any evidence to the contrary, that the conditions described by the plaintiff could lead a reasonable factfinder to conclude that they amounted to cruel and unusual punishment, and therefore

-45-

recommend against the entry of summary judgment dismissing plaintiff's

Eighth Amendment claim.  I further find, however, no basis to conclude

that a reasonable factfinder could find an Eighth amendment violation

based on the Tier III regulatory scheme, a violation of the Equal Protection

Clause of the Fourteenth Amendment, or that the international treaty

provisions cited give rise to a private right of action.  Accordingly, I

recommend dismissal of those claims.

Finally, I recommend dismissal of plaintiff's claims against defendant

Goord based upon the lack of his personal involvement, but against

dismissal of plaintiff's claims against defendant Selsky on this basis.  It is

therefore hereby

RECOMMENDED that defendants' summary judgment motion (Dkt.

No. 39) be GRANTED in part, and that all of plaintiff's claims against

defendant Goord, and all of plaintiff's claims against the remaining

defendants except his procedural due process and Eighth Amendment

conditions of confinement causes of action, be DISMISSED, but that to

the extent of those claims, with respect to which triable issues of fact exist,

I recommend that defendants' motion be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the

parties have TEN days within which to file written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.

FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL

PRECLUDE APPELLATE REVIEW.  Fed. R. Civ. P. 6(a), 6(e), 72; 28

U.S.C. § 636(b)(1);  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citations omitted); and it is further hereby

ORDERED that the Clerk of the Court serve a copy of this Report

and Recommendation upon the parties by regular mail.

Dated:     April 14, 2005
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\retaliation\ciaprazi.wpd

-47-